UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MATTHEW J. TURNER, Regional Director of the )
Tenth Region of the National Labor Relations Board, )
for and on behalf of the NATIONAL LABOR )
RELATIONS BOARD, )
         )
         Petitioner/Counterclaim Defendant, )   Case No.: 4:24-CV-00281-RSB-CLR
         )
         v. )
         )
FOXY LOXY PRINT GALLERY & CAFÉ, LLC, )
FOXY BAKERY, LLC D/B/A HENNY PENNY )
ARTS SPACE & CAFÉ, AND FOX & FIG, LLC )
AS A SINGLE EMPLOYER, )
         )
         Respondents/Counterclaim Plaintiffs. )

**PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENTS'
MOTION FOR PRELIMINARY INJUNCTION**

Respondents/Counterclaim Plaintiffs Foxy Loxy Print Gallery & Café, LLC, Foxy Bakery,

LLC d/b/a Henny Penny Arts Space & Café, and Fox & Fig, LLC (collectively, Foxy Loxy) are not

entitled to the extraordinary relief of a preliminary injunction halting the congressionally mandated

procedure for resolving labor disputes. Such relief is barred by the Norris-LaGuardia Act, 29 U.S.C.

§ 101 *et seq.* Further, Foxy Loxy has failed to demonstrate that the longstanding provisions of law it

challenges have caused (or will cause) it any harm whatsoever, much less show that it will suffer

imminent and irreparable harm absent a preliminary injunction.

## BACKGROUND

1.     The National Labor Relations Board (NLRB)[1] handles allegations that an employer

or union committed an unfair labor practice (ULP) in violation of the National Labor Relations Act

---

[1] References to "the NLRB" are to the agency as a whole; references to "the Board" are to the five-member body serving as head of the agency.

(NLRA), 29 U.S.C. §§ 151–169. To process these allegations, the NLRB employs Administrative Law Judges (ALJs) as initial adjudicators. ALJs are appointed in accordance with the Civil Service Reform Act, 5 U.S.C. § 3105, and the National Labor Relations Act (NLRA or Act). 29 U.S.C. § 154(a); *WestRock Services, Inc.*, 366 NLRB No. 157, slip op. at 3 (2018). An ALJ's "proposed report, together with a recommended order," are reviewed by the Board on any party's request. 29 U.S.C. § 160(c).

With a few exceptions not relevant here, 5 U.S.C. § 7521(a) provides that ALJs may be removed "only for good cause established and determined by the Merit Systems Protection Board [(MSPB)] … after opportunity for hearing before the [MSPB]." Under this statute, removing an NLRB ALJ has two steps: the Board must bring an action to remove an ALJ, and the MSPB must find good cause for removal. The MSPB has found "good cause" to remove or suspend ALJs for several reasons, including insubordination, misconduct, and poor performance. *E.g.*, *SSA v. Carr*, 78 MSPR 313, 327–28, 338 (1998). 5 U.S.C. § 1202(d) states that MSPB members "may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office."

2.      The members of the NLRB's Board serve staggered terms of up to five years. 29 U.S.C. § 153(a). Section 3(a) of the NLRA states that members may be removed only "for neglect of duty or malfeasance in office." *Id.* The Board need not accept the ALJ's rulings, findings, conclusions, or recommended order in a ULP case; it may modify or reject any of these, take additional evidence, or even assign a case to itself or a member rather than an ALJ. *Id.* § 160(b), (c); 29 C.F.R. §§ 102.34, 102.46(a). The Board's decision in a ULP case is a "final order" reviewable in a court of appeals. 29 U.S.C. § 160(e), (f). It is well settled that district courts generally lack jurisdiction to review or supervise these cases. *Bokat v. Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966); *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938), *cited in Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

One of the few areas of district court jurisdiction under the NLRA is the power to hear and decide petitions for temporary injunctive relief brought by NLRB regional staff, on behalf of the Board, under Section 10(j) of the Act. 29 U.S.C. § 160(j). Whenever a final Board order in a ULP case may be rendered ineffective by the time it takes for the NLRB's usual process to unfold, the Board may authorize an action in district court for such injunctive relief. Any such injunction expires when the Board issues its final order in the underlying case. *See id.*; 29 C.F.R. § 101.37; *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 369 (11th Cir. 1992) (". . . Congress has provided the Board with the ability to petition a district court to enjoin any unfair practices pending the outcome of the Board's administrative review of those same practices.").

3.      This case arises from unfair-labor-practice charges filed by Service Employees International Union (the Union) against three businesses in Savannah, Georgia—Foxy Loxy Print Gallery & Café, LLC, Foxy Bakery, LLC d/b/a Henny Penny, and Fox & Fig, LLC (collectively, Foxy Loxy). ECF 4-8, p. 1-3. On May 14, 2024, the Regional Director of the NLRB's Region 10 issued a Consolidated Complaint and Notice of Hearing (the "Consolidated Complaint"), scheduling a hearing for August 13, 2024, before an ALJ. The Consolidated Complaint alleges that the businesses, constituting a single-integrated business enterprise and a single employer, had engaged in numerous violations of the NLRA. *Id.*, p. 5-12. Specifically, the Consolidated Complaint alleges that a group of Foxy Loxy employees engaged in protected concerted activities by participating in a strike to protest their working conditions. ECF 4-8, p. 8. The Consolidated Complaint further alleges that Foxy Loxy violated Sections 8(a)(1) and (3) of the NLRA, 29 USC §§ 158(a)(1), (3) by, *inter alia*, terminating thirteen employees who participated in the strike. *Id.*, p. 8-11.

The administrative hearing concerning the allegations in the Consolidated Complaint began on August 13, 2024, and closed on August 16, 2024. ECF 7, p. 2. While awaiting the administrative law judge's decision, on December 19, 2024, Petitioner/Counterclaim Defendant Matthew J. Turner,

the Regional Director for NLRB Region 10 ("Petitioner"), petitioned this Court for preliminary injunctive relief pursuant to Section 10(j) of the NLRA, 29 U.S.C. § 160(j). *See* ECF 1, ECF 7. Foxy Loxy filed its Answer and Counterclaim for Injunctive Relief, its Opposition to Petitioner's Motion for Preliminary Injunction, and its own Motion for Preliminary Injunction (Mot.) on January 23, 2025. ECF 23, ECF 24, ECF 25.

On January 31, Petitioner filed a Motion for Voluntary Dismissal Under Rule 41(a)(2) of the Federal Rules of Civil Procedure, moving this Court to dismiss the Petition for Preliminary Injunction and Foxy Loxy's counterpetition for injunction without prejudice and without costs or attorneys' fees. ECF 32. Foxy Loxy opposed the motion to dismiss on February 14. ECF 36. By this filing, the NLRB now opposes Foxy Loxy's Motion for Preliminary Injunction.

4.    Separately, on January 27, President Trump removed Gwynne A. Wilcox from her position as a member of the NLRB. Complaint for Declaratory and Injunctive Relief ¶ 14, *Wilcox v. Trump*, No. 1:25-cv-00334-BAH (D.D.C. filed Feb. 5, 2025), ECF No. 1. This removal had the effect of leaving the Board without a quorum of members to review ALJ-recommended findings and orders in unfair-labor-practice proceedings. NLRB, *The Board*, https://www.nlrb.gov/about-nlrb/who-we-are/the-board (last visited Feb. 20, 2025); *see* 29 U.S.C. § 153(b). Wilcox subsequently filed a lawsuit seeking reinstatement to her former position. *See* Complaint for Declaratory and Injunctive Relief at 7, *Wilcox*, No. 1:25-cv-00334-BAH.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). A petitioner must make "a clear showing" of four elements: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury absent injunction, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction

will not disserve the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The third and fourth factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam) (equities and public interest may overcome other two factors in constitutional cases). Harm to the movant must be "likely" and not a mere possibility. *Winter*, 555 U.S. at 20. It is an "almost universal rule of American law" that, for a temporary injunction to issue, "[s]peculative injury is not sufficient . . . a preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001) (quoting Wright & Miller Fed. Prac. & Proc. Civ. § 2948.1), *abrogation on other grounds recognized by United States v. Diaz*, No. 23-50452, 2024 WL 4223684 (5th Cir. Sept. 18, 2024). Even where plaintiffs have demonstrated a strong likelihood of success, a court "cannot give the other factors short shrift." *Mock v. Garland,* 75 F.4th 563, 587 n.60 (5th Cir. 2023).

## ARGUMENT

I.    **Foxy Loxy is unlikely to succeed on the merits.**

     A.    *Congress has jurisdictionally barred injunctive remedies in labor-dispute cases except where specifically authorized by law; Foxy Loxy's request is not so authorized.*

The Norris-LaGuardia Act ("NLGA") jurisdictionally bars all "court[s] of the United States" from issuing injunctions "in any case involving or growing out of a labor dispute," with few exceptions. 29 U.S.C. § 107; *see id.* § 101 *et seq.*; *Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 253 (1970). As two district courts have recently concluded, the NLGA applies to efforts to enjoin ULP cases on the grounds advanced here by Foxy Loxy. *Amazon.com Servs. LLC v. NLRB*, No. 2:24-cv-09564, 2025 WL 466262, at *3-5 (C.D. Cal. Feb. 5, 2025), *appeal docketed*, No. 25-886 (9th Cir. Feb. 11, 2025); *VHS Acquisition Subsidiary No. 7 v. NLRB*, No. 1:24-CV-02577 (TNM), 2024 WL 4817175, at *4-7 (D.D.C. Nov. 17, 2024), *appeal docketed*, No. 25-5006 (D.C. Cir. Jan. 22, 2025).

The NLGA sets forth a broad policy in favor of the freedom of workers to "self-organization or [] other concerted activities for the purpose of collective bargaining or other mutual aid or protection," aimed at ensuring that such activities can be carried on without employer or government interference. 29 U.S.C. § 102. If a case grows out of a labor dispute, then a court must determine if the case either meets all of the rigid requirements to issue an injunction or falls into one of two narrow exceptions. 29 U.S.C. §§ 107–09; *Lukens Steel Co. v. United Steelworkers*, 989 F.2d 668, 675–76 (3d Cir. 1993) (exceptions only "to accommodate the strong federal policy in favor of arbitration" and "to reconcile the Norris LaGuardia Act with other federal statutes"). Notably, when one of the exceptions is not met, the statute requires showing that a "substantial and irreparable injury to complainant's property will follow" without issuing an injunction, 29 U.S.C. § 107(b), and no injunction may be granted if a complainant "has failed to make every reasonable effort to settle [a labor] dispute." 29 U.S.C. § 108.

This case "grows out of" a labor dispute. As Congress defined that term:

> The term "labor dispute" includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

29 U.S.C. § 113(c). And as explained above and at ECF 4-8, this case arises out of a strike and related events—near-archetypal examples of the sort of activities Congress expressly protected in Section 102 of the NLGA, 29 U.S.C. § 102. Put another way, "'the employer-employee relationship [is] the matrix of the controversy.'" *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712–713 (1982) (quoting *Columbia River Packers Assn., Inc. v. Hinton*, 315 U.S. 143 (1942)).

It is of no import that the employers' quarrel in the actions below is nominally with the government and its procedures rather than an employee or union. Norris-LaGuardia may not be construed so narrowly. "Congress was intent upon taking the federal courts out of the labor

injunction business except in the very limited circumstances left open for federal jurisdiction under the Norris-LaGuardia Act." *Jacksonville Bulk Terminals*, 457 U.S at 712 (quoting *Marine Cooks & Stewards v. Panama S.S. Co.*, 362 U.S. 365, 369 (1960)). And Congress understood that NLRA disputes were subject to Norris-LaGuardia's requirements; it included in Section 10 of the NLRA a limited exception to Norris-LaGuardia allowing injunctions only in relation to enforcement or review of final orders of the Board or upon the Board's application for temporary relief. 29 U.S.C. § 160(h).[2] To countenance an injunction against non-final Board action would enlarge this limited exception in contravention of its plain meaning. *See Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 407 (1976) (exceptions to Norris-LaGuardia's anti-injunction policy to accommodate other laws are to be construed narrowly). That Foxy Loxy raises constitutional claims is of no moment; the "broad language of the NLGA encompass[es] such claims because the claims 'would not exist but for the underlying Board charges.'" *Amazon.com*, 2025 WL 466262, at *4 (quoting *VHS*, 2024 WL 4817175, at *5, and *Armco, Inc. v. United Steelworkers*, 280 F.3d 669, 680 (6th Cir. 2002)).

And significantly, the relevant inquiry is not whether these lawsuits themselves constitute labor disputes, but whether they "involved" or "gr[e]w out" of such a dispute. 29 U.S.C. § 107; *see United Steelworkers v. Bishop*, 598 F.2d 408, 414 (5th Cir. 1979).[3] In *Bishop*, the court held invalid an injunction preventing picketing from interfering with removal of customer-owned materials from a

---

[2] The limited jurisdiction granted by Congress to district courts to grant temporary injunctive relief under the NLRA is narrowly construed, and does not open the door more broadly to district-court regulation of unfair-labor-practice proceedings. *See, e.g., Zipp v. Geske & Sons, Inc.*, 103 F.3d 1379, 1382-83 (7th Cir. 1997); *accord NLRB v. Vista Del Sol Health Svcs., Inc.*, 40 F. Supp. 3d 1238, 1253 (C.D. Cal. 2014) (NLRB's invocation of subject-matter jurisdiction to enforce administrative subpoena did not grant district court jurisdiction to enjoin NLRB unfair-labor-practice case). There is thus no reason to treat those jurisdictional grants as expanding federal court jurisdiction under the NLGA, either.

[3] Decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding on this Court. *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc)

strike-bound steel fabricating plant in a replevin action brought by the customer. *Id.* at 410. In so doing, the court found that "[t]he fact that the labor dispute was between the employer . . . and its employees' Union, while the case obtaining before the district court involved the employer and its customer, cannot control." *Id.* at 414.

Once this Court has concluded that this case arises out of a labor dispute, the unavailability of injunctive relief is inexorable. The NLGA flatly strips federal courts of jurisdiction to issue any "restraining order or temporary or permanent injunction . . . contrary to the public policy declared in this chapter." 29 U.S.C. § 101. Although the statute provides an illustrative list of such illegal objectives, 29 U.S.C. § 104, that list is not exclusive, *In re Dist. No. 1-Pac. Coast Dist., Marine Eng'rs' Beneficial Ass'n*, 723 F.2d 70, 80 (D.C. Cir. 1983); *accord Camping Const. Co. v. Dist. Council of Iron Workers*, 915 F.2d 1333, 1344 (9th Cir. 1990) ("Congress did not stop with section [104]"). For these reasons, as the District Court for the District of Columbia recently concluded, the NLGA applies and precludes any grant of an injunction in these circumstances. *See VHS*, 2024 WL 4817175, at *7; *accord Amazon*, 2025 WL 466262, at *4; *Nexstar Media, Inc. Grp. v. NLRB*, No. 4:24-cv-1415, 2024 WL 4127090, at *5 (N.D. Ohio Aug. 26, 2024) (court "unpersuaded" by argument that NLGA was "inapplicable" because NLRB was defendant).

By contrast, the District Court for the District of South Carolina recently issued an opinion denying a motion for preliminary injunction brought, in part, on removal claims identical to those at issue in this case, but rejecting Norris-LaGuardia as a jurisdictional bar. *Waffle House, Inc. v. NLRB*, No. 3:24-6751-MGL, slip op. at 7-9 (D.S.C. Feb. 10, 2025). The court properly found that a literal reading of the NLGA would prohibit that plaintiff's request for injunctive relief. However, noting that the Supreme Court has recognized exceptions to the NLGA "in limited situations where necessary to accommodate the [NLGA] to specific federal legislation," *id.* at 8 (citing *Jacksonville Bulk Terminals*, 457 U.S. at 708), *Waffle House* found it was proper to retain jurisdiction to "accommodate

the NLRA." *Id.* The court relied on Section 10(h) of the NLRA, which provides that the NLGA does not prevent granting certain relief that is described in Section 10 (see above p. 7). The court noted that a challenger raising constitutional claims "before a reviewing court within the confines of section [10]" would not be subject to the jurisdictional provisions of the NLGA. *Id.* at 9. The court then inferred that an injunction against a proceeding "through a collateral district-court challenge" must not be barred by the NLGA either. *Id.*

It erred. To be sure, several subsections of Section 10 authorize temporary relief, but each section refers to situations where *the Board* seeks such relief. *See* 29 U.S.C. § 160(e), (f), (j), (l). Nothing in Section 10 authorizes any other party, like a respondent in a ULP case, to seek temporary relief. Congress strictly limited the options available to aggrieved private parties to one: that party may petition for review of a final Board order and seek a decree modifying or setting aside that order. In the context of that review, Section 10(f) authorizes courts to grant "*to the Board* such temporary relief or restraining order as it deems just and proper." 29 U.S.C. 160(f). Section 10 does not authorize courts to issue injunctions on behalf of respondents against the NLRB or its agents. And neither the plaintiff in *Waffle House* nor Foxy Loxy in this case can cite any example of a court reviewing a final Board order ever having construed its authority to permit it to enjoin the Board. For these reasons, *Waffle House* does not persuasively show that the instant request for injunctive relief can be maintained under the NLGA.

Independently, even where injunctive relief is permitted by the NLGA, the applicant must both [1] "comply with any obligation imposed by law" and [2] "make every reasonable effort to settle the dispute," including through government dispute resolution machinery. *Bhd. of R.R. Trainmen, Enter. Lodge, No. 27, v. Toledo, P. & W.R.R.*, 321 U.S. 50, 56-57 (1944). These requirements are conjunctive. *Id.* And they apply even if the asserted basis for the injunction arose after the labor

dispute. *See id.* at 56 (finding that "[i]f [statutory procedures] had been used, it would have averted . . . the need for an injunction").

Foxy Loxy fails to meet this standard in this case. First, refusal to exhaust an "administrative avenue" to resolve a controversy—here, the NLRB's unfair-labor-practice proceedings—is a bar to injunctive relief. *See BNSF Ry. Co. v. Int'l Ass'n of Sheet Metal, Air, Rail & Transp. Workers—Transp. Div.*, 973 F.3d 326, 342 (5th Cir. 2020) (failure to pursue proceedings under Railway Labor Act precluded injunction). And Foxy Loxy has not made "every reasonable effort" to resolve its differences with its employees before invoking the equitable powers of a federal court. 29 U.S.C. § 108. Indeed, Foxy Loxy's position appears to be that it is entitled to an injunction against the operation of the very "obligation[s] imposed by law" that it is jurisdictionally required to exhaust prior to seeking injunctive relief. *Id.*

Foxy Loxy cannot show that it falls into one of Norris-LaGuardia's exceptions or that it has satisfied the NLGA's exacting requirements for injunctive relief.

## B. Failure to allege causal harm is fatal to Foxy Loxy's removal claims.

Foxy Loxy challenges the constitutionality of the statutory removal restrictions that apply to NLRB Board members, 29 U.S.C. § 153(a), and administrative law judges, 5 U.S.C. § 7521(a). As the Sixth Circuit has remarked, "[t]hese separation of powers questions are both complicated and consequential, but [a court] need not address them at the preliminary injunction stage." *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *2 (6th Cir. Oct. 13, 2024), *emergency application for writ of injunction denied*, No. 24A348, 2024 WL 4508993, at *1 (U.S. Oct. 15, 2024) (Kavanaugh, J., in chambers). Instead, Foxy Loxy's removal claims fail at the threshold because it

"has not pointed to any harm [it] suffered from" an officer serving under an unconstitutional removal provision. *Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1315 (11th Cir. 2024).[4]

An unlawful removal restriction does not deprive properly appointed officers of "the authority to carry out the functions of the[ir] office[s]." *Collins v. Yellen*, 594 U.S. 220, 258 (2021). So long as they are validly appointed, officials are not exercising power that they do "not lawfully possess." *Id.* Thus, to state a claim that the removal provisions applicable to NLRB ALJs and Board members are unconstitutional, Foxy Loxy must show that the provisions "cause[d it] harm." *Id.* at 259–60.

The circuit courts to have addressed the issue—including the Eleventh Circuit—unanimously hold that challengers must show that an allegedly unconstitutional removal provision inflicted actual harm on them to obtain relief. *See, e.g.*, *Rodriguez*, 118 F.4th at 1314-15. This requires a showing of three demanding requirements: "(1) a substantiated desire by the [appointing official][5] to remove the unconstitutionally insulated actor, (2) a perceived inability to remove the actor due to the infirm provision, and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022)

---

[4] The Department of Justice recently notified a district court that it would not continue to defend the constitutionality of "multiple layers of removal restrictions for administrative law judges in 5 U.S.C. § 7521," or "the for-cause removal protections for the Commissioners of the Federal Trade Commission in 15 U.S.C. § 41." Notice of Change in Position at 1, *Express Scripts, Inc. v. FTC*, No. 4:24-cv-1549-MTS (E.D. Mo. Feb. 15, 2025), ECF No. 57; *see also* Letter from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson, Speaker of the United States House of Representatives (Feb. 12, 2025) (explaining the Department of Justice's view that "statutory tenure protections . . . for members of the National Labor Relations Board, 29 U.S.C. § 153(a), . . . are unconstitutional"), https://www.justice.gov/oip/media/1389526/dl?inline. Consistent with these positions, in opposing Foxy Loxy's request for preliminary injunctive relief, the NLRB does not rely on any arguments defending the constitutionality of the tenure provisions at issue here.

[5] It is, of course, well-settled that the power to appoint implies the power to remove. *Myers v. United States*, 272 U.S. 52, 161 (1926). Accordingly, for purposes of causal harm, the relevant question as to Board members is whether the President desires to remove them, and the relevant question as to ALJs is whether the Board desires to remove them.

("*CFSA*").[6] Six circuit courts have considered whether to grant relief based on the asserted unconstitutionality of the ALJ removal-restrictions contained in 5 U.S.C. § 7521(a). All have refused to do so in the absence of an affirmative showing of causation. *Rodriguez*, 118 F.4th at 1315 ("There is nothing in the record which suggests, for example, that the Commissioner or the President were considering dismissing or terminating the ALJ who adjudicated Mr. Rodriguez's case . . . but were prevented from doing so by the for-cause removal provisions."); *NLRB v. Starbucks Corp.*, 125 F.4th 78, 88-89 (3d Cir. 2024); *Leachco, Inc. v. CPSC*, 103 F.4th 748, 757–58 (10th Cir. 2024), *cert. denied*, No. 24-156, 2025 WL 76435 (Jan. 13, 2025); *K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *Calcutt v. FDIC*, 37 F.4th 293, 318–20 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1138 (9th Cir. 2021); *see also Consumer Fin. Prot. Bureau v. L. Offs. of Crystal Moroney, P.C.,* 63 F.4th 174, 180 (2d Cir. 2023) (party challenging an agency due to removal protections "must show that the agency action would not have been taken *but for* the President's inability to remove" a protected officer), *cert. denied*, 144 S. Ct. 2579 (2024); *CFSA*, 51 F.4th at 632 (similar). Likewise, in a persuasively reasoned decision, the Sixth Circuit recently declined to enjoin a pending NLRB proceeding on removability grounds because the plaintiff could not show that either ALJs' or Board members' removal protections caused any harm. *YAPP USA Auto. Sys.*, 2024 WL 4489598, at *2-3.[7]

Multiple district courts have also applied causal-harm principles to deny various forms of relief sought by removal-restrictions challengers in cases involving the NLRB. *See, e.g., Waffle House*, slip op. at 20-21 (denying motion for preliminary injunction); *HonorHealth v. NLRB*, No. CV-24-

---

[6] After an unrelated holding in *CFSA* was reviewed and reversed by the Supreme Court, *see* 601 U.S. 416 (2024), the Fifth Circuit formally reinstated the portion of its opinion addressing *Collins*. *See* 104 F.4th 930 (2024), *reh'g denied*, No. 21-50826 (5th Cir. Nov. 12, 2024).

[7] In a summary order, the Third Circuit similarly declined to grant an injunction pending appeal sought on removability grounds. *See* Order, *Spring Creek Nursing & Rehab. Ctr. LLC v. NLRB*, No. 24-3043 (3d Cir. Nov. 6, 2024), ECF No. 9.

03009-PHX-DJH, 2024 WL 4769772, at *3-4 (D. Ariz. Nov. 13, 2024) (denying motion for temporary restraining order), *dismissed*, No. CV-24-03009-PHX-DJH (D. Ariz. Jan. 23, 2025); *Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, No. 24-09016, 2024 WL 4690938, at *3 (D.N.J. Nov. 6, 2024) (denying motion for injunction pending appeal); *Ares Collective Grp. LLC v. NLRB*, No. CV-24-00517-TUC-SHR, 2024 WL 4581436, at *2 (D. Ariz. Oct. 25, 2024) (denying motion for temporary restraining order), *dismissed*, No. CV-24-00517-TUC-SHR (D. Ariz. Jan. 29, 2025); *see also Kerwin v. Trinity Health Grand Haven Hosp.*, No. 1:24-cv-445, 2024 WL 4594709, at*4–5 (W.D. Mich. Oct. 25, 2024) (denying motion for judgment on the pleadings filed by respondent in a Section 10(j) case), *appeal docketed*, No. 24-1975 (6th Cir. Nov. 5, 2024); *Cortes v. NLRB*, No. 1:23-cv-02954, 2024 WL 1555877, at *7 (D.D.C. Apr. 10, 2024) (dismissing the plaintiffs' complaint for injunctive and declaratory relief), *appeal docketed*, No. 24-5152 (D.C. Cir. June 10, 2024).

Foxy Loxy does not come close to satisfying *Collins*'s requirements. Nor could it; there is no evidence that the Board desires to remove the presiding ALJ in the underlying case, and—far from being constrained by the removal restrictions set forth in Section 3(a) of the NLRA—the President has actually removed a Board Member, Gwynne Wilcox, that he does not wish to retain in office. *See Wilcox v. Trump*, No. 1:25-cv-00334 (D.D.C. Feb. filed 5, 2025). An effectuated removal is utterly inconsistent with "a perceived inability to remove." *CFSA*, 51 F.4th at 632.[8]

Although it ignores—and thus forfeits—its obligations under *Collins*'s causal-harm rubric, Foxy Loxy does cite to a trio of Texas district court cases—*Space Exploration Technologies Corp. v. NLRB*, --- F. Supp. 3d ----, 2024 WL 3512082, at *6 (W.D. Tex. July 23, 2024) ("*SpaceX*"), *Energy Transfer, LP v. NLRB*, No. 3:24-CV-198, 2024 WL 3571494, at *1 (S.D. Tex. July 29, 2024), and *Aunt

---

[8] Former member Wilcox has sued for reinstatement, *see Wilcox v. Trump*, No. 1:25-cv-00334-BAH (D.D.C.), but this Court need not and should not speculate as to what impact such reinstatement, if ordered at all, would have upon this case.

*Bertha v. NLRB*, No. 4:24-CV-00798-P, 2024 WL 4202383, at *4 (N.D. Tex. Sept. 16, 2024), all of which have been consolidated on appeal to the Fifth Circuit (Case No. 24-50627)—which, upon a close reading, do argue that challenges of this sort should be exempt from *Collins*'s causal-harm standard. ECF 24, at 2–3. Those cases fundamentally misapply the law.

First, in *SpaceX*, the district court erroneously held that *Collins* was inapplicable where there is a live claim for prospective relief. 2024 WL 3512082, at *6. But circuit courts have widely rejected this exact same argument. *See CFSA*, 51 F.4th at 631; *Leachco*, 103 F.4th at 757; *Calcutt*, 37 F.4th at 316; *Crystal Moroney*, 63 F.4th at 180-81; *see also YAPP USA Auto. Sys., Inc. v. NLRB*, --- F. Supp. 3d ----, No. 24-12173, 2024 WL 4119058, at *10 n.5 (E.D. Mich. Sept. 9, 2024) (declining to follow *SpaceX*'s reasoning).[9] Indeed, as the Sixth Circuit has stated, "[t]he question of whether the removal protection scheme inflicted harm 'remains the same whether the petitioner seeks retrospective or prospective relief.'" *YAPP*, 2024 WL 4489598, at *3 (quoting *Calcutt*, 37 F.4th at 316); *see also Leachco*, 103 F.4th at 757 (noting agreement with cases from the Second, Fifth, and Sixth Circuits). The rationale behind *Collins*—that an official unconstitutionally protected from removal can still exercise authority without violating the Constitution—applies equally to requests for prospective relief. *See Collins*, 594 U.S. at 267 (Thomas, J., concurring) (noting that "[t]he mere existence of an unconstitutional removal provision…generally does not automatically taint Government action by an official unlawfully insulated").

Second, in *Energy Transfer*, the district court relied on *Cochran v. SEC*, 20 F.4th 194, 210 n.16 (5th Cir. 2021), *aff'd & remanded sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023), and *Consumers' Research v. CPSC*, 91 F.4th 342, 349 (5th Cir. 2024), *cert. denied*, No. 23-1323, 2024 WL 4529808 (U.S.

---

[9] The Eleventh Circuit's decision in *Rodriguez*, 118 F.4th at 1314, addressed only retrospective relief, and thus did not pass upon the claimed distinction between prospective and retrospective relief that *CFSA*, *Leachco*, *Crystal Moroney*, and *Calcutt* rejected.

Oct. 21, 2024), to hold that the *Collins* injury requirement is "readily satisfied," 2024 WL 3571494, at *4, by the mere allegation that a company was "simply being made to participate in an unconstitutional proceeding," *id.* at *3 n.4. But *Cochran* concerned federal-question jurisdiction, and *Consumers' Research* addressed standing. *Cochran*, 20 F.4th at 199; *Consumers' Rsch.*, 91 F.4th at 349–51. Those decisions do not bear on the question of entitlement to relief, and *Energy Transfer* erred to the extent it concluded otherwise. Since *Aunt Bertha* simply follows *Energy Transfer* without further analysis, its decision should not be followed either. 2024 WL 4202383, at *3.

**II.    Foxy Loxy has failed to establish that it will experience any irreparable harm.**

### A.  *A bare allegation of a constitutional violation, without more, does not establish irreparable harm, and Foxy Loxy pleads no additional facts that would, if proven, establish such harm.*

Foxy Loxy has not met its burden of showing irreparable harm, let alone established that such harm is likely to occur. *Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1225 (11th Cir.), (court cannot rely on its intuition about likelihood of irreparable harm, as petitioner bears burden of proof), *vacated on other grounds*, 20 F.4th 1385 (11th Cir. 2021).

Contrary to Foxy Loxy's position, simply making a constitutional claim is not a substitute for showing likelihood of irreparable harm; alleged constitutional injuries rarely merit preliminary injunctive relief. *Id.* (citing *Siegel v. LePor*, 234 F.3d 1163, 1177 (11th Cir. 2000) (en banc)); *accord Leachco*, 103 F.4th at 753 (participation in unconstitutionally structured proceeding not irreparable harm). Courts in this circuit only presume irreparable harm when the alleged constitutional injury involves either the right to privacy or an imminent threat of chilling or preventing pure speech. *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209, 1229 (11th Cir. 2017) (citing *Siegel*, 234 F.3d at 1178). And this circuit is no outlier; indeed, the authorities cited and selectively quoted by Foxy Loxy to support its claim, ECF 24 at 9, are all limited to the First Amendment. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury"); *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (same); 11A Wright & Miller *Federal Practice and Procedure* § 2948.1 ("When an alleged deprivation of a constitutional right is involved, such as the right to free speech or freedom of religion, most courts hold that no further showing of irreparable injury is necessary"). Foxy Loxy does not claim the sort of constitutional injury where the Eleventh Circuit presumes irreparable harm, *Siegel*, 234 F.3d at 1177-78, and may not distort other authorities to say otherwise.

Foxy Loxy then claims that *Axon Enterprise, Inc. v. FTC*, 598 U.S. 174 (2023), makes proof of irreparable harm unnecessary where it can allege constitutional injury from an improper removal protection. ECF 24, at 9-10. But *Axon* did not address injunctive relief or irreparable harm. Rather, it only addressed subject-matter jurisdiction over structural constitutional challenges; such a challenge must allege a "wholly collateral" injury outside an agency's expertise, in order to avoid statutory exhaustion requirements. *Axon*, 598 U.S. at 185-86; *see Leachco*, 103 F.4th at 759 (*Axon* is "about jurisdiction"); *Alpine Sec. Corp. v. FINRA*, 121 F. 4th 1314, 1336 (D.C. Cir. 2024) ("*Axon* answered a statutory jurisdictional question…the Court did not speak to what constitutes irreparable harm for…a preliminary injunction"); *YAPP*, 2024 WL 4489598, at *3. And, relying on *Seila Law LLC* v. *Consumer Financial Protection Bureau,* 591 U.S. 197 (2020), *Axon* found that such challenges allege a "here-and-now injury" sufficient to supply Article III standing. *Axon*, 598 U.S. at 191 (citing *Seila Law,* 591 U. S. at 212). But that is not enough to obtain the extraordinary remedy of an injunction.

The Supreme Court recognized as much in *Collins*: "What we said about standing in *Seila Law* should not be misunderstood as a holding on a party's entitlement to relief based on an unconstitutional removal restriction." 594 U.S. at 259 n.24. Contrary to Foxy Loxy's argument, ECF 24, at 9-10, *Axon*'s observation that the challengers in that case were alleging a "here-and-now injury" merely gets it through the courthouse door; it does not entitle it to injunctive relief. 598 U.S.

at 191. The Tenth Circuit has explained that merely alleging a "here-and-now injury" does not equate to irreparable harm, *Leachco*, 103 F.4th at 759 (citing *Seila Law*, 591 U.S. at 212), and the Supreme Court's own refusal to enjoin agency proceedings in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 513 (2010), implicitly supports what *Leachco* explicitly said. This Court should therefore decline Foxy Loxy's invitation to make the very mistake *Collins* warns against, lest injunctions become the rule, not the exception.[10]

Besides failing to show a legal presumption of irreparable harm, Foxy Loxy has failed to independently show it will be irreparably harmed. As discussed above, Foxy Loxy cannot show irreparable harm because it has failed to allege any causal harm. *See YAPP*, 2024 WL 4489598, at *3. And there is an additional bar to any showing of imminent, grave irreparable harm as to Foxy Loxy's claims regarding removability of Board members—the agency currently lacks a quorum of serving Members. *See* NLRB, *The Board*, https://www.nlrb.gov/about-nlrb/who-we-are/the-board; *President's Termination of NLRB General Counsel and Member*, https://natlawreview.com/article/presidents-termination-nlrb-general-counsel-and-member-what-does-mean, National Law Review, Jan. 30, 2025. The Board's statutory quorum is three members, 29 U.S.C. § 153(b); consequently, it is not issuing final decisions in *any* case, much less Foxy Loxy's. There is no need or warrant for this Court to enjoin the Board from doing something that it itself recognizes that it currently cannot do.

Further, while Foxy Loxy asserts that the burdens and uncertainty of the administrative proceeding inflict irreparable economic harm, ECF 24, at 10, the Supreme Court has repeatedly held that neither the "expense and annoyance of litigation" nor "litigation expense, even substantial and unrecoupable cost…constitute irreparable injury." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244

---

[10] The district court decisions that Foxy Loxy again relies upon—*Energy Transfer*, *Aunt Bertha*, and *SpaceX*—do not hew to the foregoing principles and should not be followed.

(1980) (cleaned up) (citing *Petroleum Expl., Inc. v. Pub. Serv. Comm'n*, 304 U.S. 209, 222 (1938);

*Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)). The pre-split Fifth Circuit

recognized that these supposed harms are part of the "social burden of living under government."

*Bradley Lumber Co. of Ark. v. NLRB*, 84 F.2d 97, 100 (5th Cir. 1936). Further, Foxy Loxy's claims of

reputational harm cannot support the extraordinary relief requested. A petitioner must provide

evidence clearly showing that they will certainly be irreparably harmed without a preliminary

injunction; vague statements about a "cloud of uncertainty" and threats to unspecified business

interests, ECF 24, at 10, are neither evidence nor proof of certain harm. *Swisher Int'l, Inc. v. United

States Food & Drug Admin.*, No. 21-13088, 2022 WL 320889, at *5 (11th Cir. Feb. 3, 2022) (per

curiam); *Brown*, 4 F.4th at 1225, 1228. Without either a valid presumption of irreparable harm or

evidence clearly showing its likelihood, Foxy Loxy cannot meet its burden on this point—and, thus,

its request for extraordinary relief should be denied.

### B. *Foxy Loxy's unjustified delay in seeking preliminary injunctive relief justifies denial.*

Foxy Loxy's delay in filing for injunctive relief shows the lack of any immediate or

irreparable threat posed by NLRB proceedings and underscores the inequity of awarding Foxy Loxy

an injunction. A "maxim of equity is that it 'assists the diligent, not the tardy.'" *Del. State Sportsmen's

Ass'n.*, 108 F.4th 194, 206 (cleaned up). "A delay in seeking a preliminary injunction of even only a

few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal,

LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (five-month delay).

If Foxy Loxy believed the underlying ULP proceedings threatened it irreparably, it could

have raised its constitutional claims in court as early as May 14, 2024, when the Consolidated

Complaint issued and Foxy Loxy was made aware that the ALJ hearing was scheduled to open on

August 13. ECF 4-8. But Foxy Loxy waited until January 23, 2025—over eight months from the

issuance of the Consolidated Complaint and over five months from the conclusion of the ALJ

hearing—to file its preliminary injunction claim with this Court. While Foxy Loxy blames "economic reasons" for its choice to seek judicial relief on these claims only after the NLRB "decided to bring a 10(j) action," ECF 24 at 9, the Eleventh Circuit has held that "tactical reason[s] for delay" until further legal developments prompt action "provide[] the fatal blow" to requests for relief. *Gonzalez v. United States*, 981 F.3d 845, 853 (11th Cir. 2020).

Such conduct is inconsistent with a claim of irreparable harm. *See Alabama v. U.S. Dep't. of Commerce*, 546 F. Supp. 3d 1057, 1073-74 (M.D. Ala. 2021) ("[B]y sitting on his or her rights for even a few months, a plaintiff has squandered any corresponding entitlement to injunctive relief."); *see also Ares Collective Group*, 2024 WL 4581436, at *2 (denying temporary restraining order where the plaintiffs had nearly a year's notice of ALJ trial but filed for injunctive relief two days before hearing); *HonorHealth*, 2024 WL 4769772, at *4 (denying temporary restraining order filed nine days before start of ALJ trial in part because delay in filing "implies a lack of urgency or irreparable harm"). If a request for injunctive relief filed just before the start of a challenged administrative hearing is too late, then the same must be true of Foxy Loxy's request to enjoin unfair-labor-practice proceedings months after the underlying hearing closed.

### C. *Preliminary injunctive relief is improper where severance is available.*

Foxy Loxy's removal claims do not entitle it to a preliminary injunction; instead, the proper remedy (if any) would be to sever the offending statutory language, not halt the NLRB's proceedings. There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress," so long as the remainder of the law can still function and remain operative. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625, 627 (2020); *see also Free Enter. Fund*, 561 U.S. at 508; *Seila Law*, 591 U.S. at 234. Board member and ALJ removal restrictions are readily severable, particularly given the NLRA's explicit severability provision, 29 U.S.C. § 166, and the Supreme

Court's practice of using that remedy in similar circumstances, *see Collins*, 594 U.S. at 257–60; *Seila Law*, 591 U.S. at 232-38; *Free Enter. Fund*, 561 U.S. at 508–10; *see also VHS Acquisition Subsidiary No. 7 v. NLRB*, --- F. Supp. 3d ---, 2024 WL 5056358, at *10 (D.D.C. Dec. 10, 2024) (severing removal restrictions from 5 U.S.C. § 7521(a)).

Law and logic command that when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974). Because Foxy Loxy has not shown causal harm and the most it could obtain at final judgment is severance, it is not entitled to an injunction of the administrative proceedings. *See Space Expl. Techs. Corp. v. Bell*, 701 F. Supp. 3d 626, 635 (S.D. Tex. 2023) (holding that the plaintiff "ha[d] not shown it is entitled to an injunction instead of severance on its removal claim").[11]

Recent district court decisions within the Fifth Circuit that awarded preliminary injunctive relief despite the availability of severance did so in error. For example, the court in *SpaceX* found that "consideration of severance is premature" before reaching the merits. 2024 WL 3512082 at *5. But *SpaceX* rests on circular logic—that because the harm sought to be prevented is the proceeding itself, an injunction was warranted. *Id.*, at *5-6. Thus, according to that decision, the plaintiff was entitled to an injunction because it was entitled to an injunction and severance would not achieve that end. Such reasoning does not withstand scrutiny. And both *Energy Transfer* and *Aunt Bertha* simply adopted *SpaceX*'s faulty analysis. *See* 2024 WL 3571494, at *4, 2024 WL 4202383, at *3. Further, those decisions are contrary to precedent, giving scant (if any) consideration to *Barr's* "strong presumption of severability" and barely engaging with *Seila Law* or *Free Enterprise*. Accordingly, those out-of-circuit decisions should not inform the Court's analysis here.

---

[11] It is not necessary for this Court to decide now precisely how severance would operate at final judgment in order to deny the present motion.

### III.    The balance of the equities and the public interest factors favor the Board.

Halting duly enacted laws, as Foxy Loxy requests, threatens serious harm to the public. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King,* 567 U.S. 1301, 1303 (2012) (Roberts, J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)).[12] "[G]reat weight" should be given to "the fact that Congress already declared the public's interest and created a regulatory and enforcement framework." *In re Sac & Fox Tribe of Mississippi in Iowa/Meskwaki Casino Litig.,* 340 F.3d 749, 760 (8th Cir. 2003) (cleaned up). The NLRA was enacted in 1935 to help pull the country out of the Great Depression by diminishing the harm of labor unrest, and it exclusively empowers the NLRB to protect the "fundamental right" of employees to engage in union-related or other concerted activity "without restraint or coercion." *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 33 (1937). The Act's procedures are the sole mechanism for employees to vindicate their rights, *see Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.,* 309 U.S. 261, 265–66 (1940), and blocking the only avenue for redressing violations of fundamental rights cannot serve the public interest.[13]

Conspicuously absent from Foxy Loxy's equities argument is the effect that granting a preliminary injunction would have on those not before the Court: the employees who were allegedly discharged for exercising rights protected by the NLRA. Those employees, who may be entitled to reinstatement under Section 10(c) of the NLRA, 29 U.S.C. § 160(c), have no other legal means to

---

[12] The reason that the equities and public interest "merge when the Government is the opposing party" in injunction litigation, *Nken,* 566 U.S. at 435, is because "the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. Fed. Election Comm'n,* 831 F.3d 500, 511 (D.C. Cir. 2016).

[13] Foxy Loxy argues that, because it is likely to succeed on the merits, the government has no interest in enforcing the NLRA. ECF 24, at 11. This collapses "the four factors into one," rather than requiring Foxy Loxy to meet all four requirements for extraordinary relief. *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.,* 108 F.4th 194, 202 (3d Cir. 2024).

vindicate their labor rights absent the NLRB's procedures. The passage of time plainly matters here—that is why Congress added Section 10(m) into the NLRA, "providing that the Board should give discriminatory unfair labor practice claims arising under § 8(a)(3) priority over all other cases except secondary boycotts." *Hammontree v. NLRB*, 925 F.2d 1486, 1511 (D.C. Cir. 1991) (en banc) (Mikva, J., dissenting) ("§ 10(m) was intended to redress the problem of the individual employee who loses his job or wages as a result of discriminatory behavior" and to deter "delays [in] hearing such cases"). The Board's regulations accord this same priority to discrimination cases, providing at 29 C.F.R. § 102.97, that any complaint in such a case "will be heard expeditiously and the case will be given priority in its successive steps following its issuance (until ultimate enforcement or dismissal by the appropriate circuit court of appeals) over all cases," except in circumstances not relevant here.

When it comes to discharged employees, unduly delaying potential issuance of a Board remedial order poses real harm. If a final Board reinstatement order comes too late, the chill experienced by the employer's remaining workforce may not be successfully remedied, or the employer may profit from its own unfair labor practice if economic necessity forces discharged employees to take other jobs and decline reinstatement. *See S. Lichtenberg & Co.*, 952 F.2d at 373-74 (in wake of nine allegedly discriminatory discharges, damage to remaining employees' organizational efforts likely to suffer absent injunction). *Cf. NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1427 (11th Cir. 1998) (discharges during union campaign send "a powerful message of deterrence to other potential union supporters"); *Bandag, Inc. v. NLRB*, 583 F.2d 765, 772 (5th Cir. 1978) (violations such as a discharge "live on in the lore of the shop and continue to repress employee sentiment . . .").

Foxy Loxy stands to benefit from having the enforcement of the NLRA halted without regard to the ultimate merit of its positions, while others bear the hidden cost. The nation's workers, who will lose critical workplace protections if the NLRB is indefinitely enjoined from fulfilling its

statutory mandate, cannot justly be treated as mere collateral damage to this proceeding. This is precisely why *Winter* and its predecessors developed a four-factor test requiring balancing of the equities before granting preliminary injunctive relief. Every preliminary injunction reflects a predictive judgment by the courts that the harm of imposing a preliminary injunction is nonetheless worth it, even if such relief turns out to ultimately be unwarranted at final judgment. *See Del. St. Sportsman's Ass'n*, 108 F.4th at 200 ("Injunctions themselves can inflict harm."). *Winter* found that balance to weigh heavily in favor of the governmental defendants despite assuming the validity of the plaintiffs' claims. 555 U.S. at 26. And compared to *Winter* (itself a balance the Supreme Court called "not . . . a close question," *id.*), this case—which pits wholly abstract and hypothetical interests against immediate material harm to the rights of employees to speedy justice—is easy.

Finally, granting an injunction here would portend that nearly every unfair-labor-practice case arguably connected to this court can meet a similar fate. As the Northern District of Illinois recently put it, this "position—if accepted—would neuter the National Labor Relations Act by blocking all proceedings before the National Labor Relations Board." *Alivio Med. Ctr. v. Abruzzo*, No. 1:24-cv-7217, 2024 WL 4188068 at *11 (N.D. Ill. Sept. 14, 2024), *dismissed with prejudice*, No. 1:24-cv-7217 (N.D. Ill. Feb. 12, 2025). The public interest would be undermined, not served, by providing such "extraordinary" relief. *Id.*

## CONCLUSION

Foxy Loxy's motion for preliminary injunction should be denied.

Respectfully submitted,

Kevin P. Flanagan
*Deputy Assistant General Counsel*

Paul A. Thomas
*Supervisory Attorney*

Grace L. Pezzella
*Trial Attorney*

/s/ *Phillip Melton*
Phillip H. Melton
*Attorney*
Texas Bar No. 24105346
(202) 273-3834
phillip.melton@nlrb.gov

National Labor Relations Board
*Contempt, Compliance, and Special Litigation Branch*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20570

and

Tara M. Lyons
*Acting United States Attorney*

/s/ *Bradford C. Patrick*
Bradford C. Patrick
*Assistant United States Attorney*
Southern District of Georgia
South Carolina Bar No. 102092
P.O. Box 8970
Savannah, GA 31412
Phone: (912) 652-4422
Fax: (912) 652-4427

Dated this 20th day of February, 2025.

## CERTIFICATE OF SERVICE

This is to certify that I have this day caused to be electronically filed the foregoing document via the CM/ECF e-filing system which will automatically serve all counsel who have made an appearance.

Respectfully submitted,

/s/ *Phillip Melton*
Phillip H. Melton
*Attorney*
Texas Bar No. 24105346
(202) 273-3834
phillip.melton@nlrb.gov

National Labor Relations Board
*Contempt, Compliance, and Special
Litigation Branch*
1015 Half Street, S.E. - 4th Floor
Washington, DC 20570

Dated this 20th day of February, 2025.